IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MIRANDA SAMPSON<br>26101 Country Club Blvd, Apt 1527<br>North Olmsted, Ohio, 44070<br><br>                        Plaintiff,<br>      v.<br><br>UNIVERSITY HOSPITAL HEALTH SYSTEMS, INC.<br>11100 Euclid Avenue<br>Cleveland, Ohio 44106<br><br>    **Serve also:**<br>    ACFB, Statutory Agent<br>    127 Public Square, Suite 4900<br>    Cleveland, OH 44114<br><br>    -and-<br><br>TONY WALISH<br>11100 Euclid Avenue<br>Cleveland, Ohio 44106<br><br>    -and-<br><br>KERRY SCHADE<br>11100 Euclid Avenue<br>Cleveland, Ohio 44106<br><br>                        Defendants. | CASE NO.:<br><br>JUDGE<br><br><u>COMPLAINT FOR DAMAGES</u><br><br><u>(Jury Demanded)</u> |

      Plaintiff, Miranda Sampson, by and through undersigned counsel, as her Complaint against Defendants University Hospital Health Systems, Inc. ("University"), Tony Walish, and Kerry Schade states and avers the following:

## **PARTIES.**

1. Sampson is an individual residing in Cuyahoga County, Ohio.

1

2. University Hospital Health Systems, Inc. ("UH") is a domestic non-profit corporation with its principal place of business located in Cuyahoga County, Ohio.

3. Upon information and belief, Walish is a resident of Cuyahoga County, Ohio.

4. Upon information and belief, Schade is a resident of Cuyahoga County, Ohio.

## PERSONAL JURISDICTION.

5. UH is an Ohio Corporation; hires citizens of the state of Ohio, contracts with companies in Ohio, and owns or rents property in Ohio. As such, the exercise of personal jurisdiction over UH comports with due process.

6. Walish and Schade are Ohio Residents who contract with companies in Ohio, vote in Ohio, and own or rent property in Ohio. As such, the exercise of personal jurisdiction over Walish and Schade comports with due process.

7. This cause of action arose from or relates to the contacts of Defendants with Ohio residents, thereby conferring specific jurisdiction over Defendants.

## SUBJECT MATTER JURISDICTION AND VENUE.

8. This Court has original subject matter jurisdiction of this case under 28 U.S.C. §§1331 and 1341, inasmuch the matters in controversy are brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 215, 216, *et seq*; the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615, *et seq*.

9. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims under the Ohio R.C. § 4112.02(A) because those claims derive from a common nucleus of operative facts.

10. Venue is proper in this District because the wrongs herein alleged occurred in this District.

## **FMLA COVERAGE.**

11. At all times referenced herein, UH employed fifty (50) or more employees for twenty (20) or more workweeks during the calendar years of 2021 and/or 2022 between and among its corporate headquarters office, warehouse(s) and/or storage facilities, and customer work sites, which are located within seventy-five (75) miles of each other, and thus was a covered employer under the FMLA pursuant to 29 CFR § 825.104.

12. At all times referenced herein, Walish was an "employer" under the FMLA as that term is defined by 29 U.S.C. 2611(4)(A)(ii), in that Walish was a person who acted in the interests of UH with respect to Sampson.

13. At all times referenced herein, Schade was an "employer" under the FMLA as that term is defined by 29 U.S.C. 2611(4)(A)(ii), in that Schade was a person who acted in the interests of UH with respect to Sampson.

## **ADMINISTRATIVE HISTORY.**

14. Within two years of the conduct alleged herein, Sampson filed a Charge of Discrimination with the Ohio Civil Rights Commission ("OCRC") against UH, Walish, and Schade, alleging that they engaged in and/or aided, abetted, compelled, and/or coerced unlawful discrimination based on her disabilities.

15. On or about October 3, 2024, the OCRC issued and mailed a Notice of Right to Sue letter to Sampson against each Defendant.

16. Sampson received her Right to Sue letter from the OCRC in accordance with Ohio Revised Code § 4112.051(D)(2).

17. Sampson has properly exhausted her administrative remedies pursuant to Ohio Revised Code § 4112.052(B)(1)(b)(i).

## **FACTUAL ALLEGATIONS.**

18. Sampson is a former employee of UH.

19. At all times referenced herein, Sampson worker for UH at the St. John Medical Center located in Westlake, Ohio.

20. Sampson began her employment with UH on or about February 14, 2022, as a Phlebotomist/Specimen Processor II.

21. Sampson suffers from post-traumatic stress disorder ("PTSD"), anxiety, and severe depression.

22. Sampson's PTSD, anxiety, and severe depression substantially impair one or more of her major life activities, including her ability to concentrate, regulate emotions, perform tasks under stress, and maintain focus during flare-ups.

23. Sampson's PTSD, anxiety, and severe depression constitute disabilities under Ohio R.C. § 4112.01(A)(13) because they are mental impairments that substantially limit her ability to perform major life activities.

24. Sampson's PTSD, anxiety, and depression require medical treatment and accommodations to enable her to work effectively and manage her symptoms.

25. When Sampson's disabilities flare up, she experiences uncontrollable crying, extreme panic (panic attacks), anxiety, and difficulty concentrating, which interfere with her ability to perform her job.

26. Sampson's conditions can become debilitating during flare-ups, requiring her to take time to recover and seek medical or emotional support.

27. In or around February of 2023, Sampson became eligible for leave under the Family and Medical Leave Act ("FMLA").

28. Sampson applied for intermittent FMLA leave to manage her disabilities and received approval from UH.

29. Subsequently, Sampson used her intermittent FMLA leave to address her symptoms during flare-ups, ensuring that she could continue to perform her job without compromising her health.

30. In or around November of 2023, Sampson arrived late to work on several occasions because of her disabilities flaring up.

31. Sampson promptly informed her supervisor, Kelly Schade, that her tardiness was related to her disabilities and covered under her FMLA leave.

32. Schade disciplined Sampson for her FMLA protected tardiness.

33. In or around February of March of 2024, Sampson renewed her FMLA leave.

34. Alternatively, Sampson failed to renew her FMLA leave.

35. In or around April of 2024, Sampson experienced further flare-ups of her PTSD, anxiety, and depression, which caused her to arrive late to work on several days.

36. Sampson reported these late arrivals as FMLA-related and informed Schade that her tardiness was caused by her disabilities.

37. Sampson's report to UH that her late arrivals were related to her disabilities constituted notice that her late arrivals were potentially FMLA qualifying, triggering UH's own notice obligations pursuant to 29 CFR § 825.300(b).

38. To the extent Sampson had not already renewed her FMLA leave, UH failed to provide Sampson with notice, in violation of 29 CFR § 825.300(b).

39. Schade disciplined Sampson again in or around April of 2024 for her tardiness, despite her protected use of FMLA leave and/or eligibility for FMLA leave and her explanations regarding her disabilities.

40. To the extent Sampson had not already renewed her FMLA leave, she was prejudiced by UH's failure to give notice of her potential eligibility for FMLA leave.

41. On each occasion, Sampson explained that her tardiness was caused by flare-ups of her disabilities and was reported as FMLA leave.

42. Schade ignored Sampson's complaints and refused to remove the disciplinary actions from her record.

43. On or about May 21, 2024, Sampson attended an intense meeting with her department's new Coordinator, Melinda Gravestock ("Meeting").

44. During the Meeting, Gravestock questioned Sampson about her performance in a manner that made Sampson feel like her job was in jeopardy.

45. As a result of the meeting, Sampson experienced a significant flare-up of her PTSD.

46. Following the meeting, Sampson suffered a panic attack, which caused her to vomit while working.

47. Sampson immediately informed Gravestock and Regional Manager, Tony Walish, of her symptoms and requested to leave work early under her FMLA leave.

48. Walish granted Sampson permission to leave work early on or about May 21, 2024.

49. To the To the extent Sampson had not already renewed her FMLA leave, UH again failed to provide Sampson with notice of her potential eligibility for FMLA leave, in violation of 29 CFR § 825.300(b).

50. Sampson took an additional day of FMLA leave on or about May 22, 2024, to recover from the flare-up and stabilize her condition.

51. Sampson returned to work on or about May 23, 2024.

52. On or about May 31, 2024, Sampson was called into a meeting with Walish and Schade.

53. During the meeting, Walish and Schade informed Sampson that she was being terminated for allegedly abandoning her shift on May 21, 2024, and for "ongoing attendance issues."

54. Walish and Schade cited every instance of tardiness or absence related to Sampson's FMLA leave in their explanation of her termination.

55. Sampson's use of FMLA leave to manage her disabilities was explicitly referenced during the termination meeting as a reason for her dismissal.

56. Sampson observed that other similarly situated employees, including Keonna Johnson and Alisha Trolio, were frequently late to work but were not disciplined for their tardiness.

57. UH knew that Johnson and Trolio were frequently late to work.

58. Jessica Moran, a manager, had complained to Sampson that Johnson and Trolio were not being disciplined for their tardiness.

59. Sampson was disciplined and ultimately terminated for conduct directly related to her disabilities and her use of FMLA leave.

60. Sampson was treated less favorably than non-disabled employees who engaged in similar conduct.

61. Sampson was treated less favorably than employees who had not engaged in protected activity under the FMLA who engaged in similar conduct.

62. Sampson was terminated because of her disabilities and in retaliation for exercising her rights under the FMLA.

63. UH interfered with Sampson's FMLA rights by counting absences and tardiness protected under her approved FMLA leave against her attendance record.

64. Alternatively, UH interfered with Sampson's FMLA rights by failing to give her notice of her FMLA rights as they related to her late arrivals, resulting in prejudice to Sampson. See *Highman v. Plastic Process Equip., Inc.*, No. 5:20-CV-803, 2022 WL 541195, at *12 (N.D. Ohio Feb. 23, 2022) ("when the absences and cause for discharge relate directly to the FMLA leave and the company's failure to give notice, as they do in this case, there is no legitimate and independent reason for dismissal.")

## COUNT I: FMLA RETALIATION.
### (Asserted Against All Defendants).

65. Sampson re-alleges and incorporates by reference the allegations set forth in paragraphs 1-57, above.

66. Sampson engaged in protected activity under the Family and Medical Leave Act ("FMLA") by requesting and using intermittent FMLA leave to manage the symptoms of her disabilities.

67. Sampson's use of FMLA leave constituted a lawful exercise of her rights under the FMLA.

68. Defendants retaliated against Sampson for her use of FMLA leave by disciplining her for FMLA-protected tardiness and absences.

69. On or about May 31, 2024, Defendants terminated Sampson's employment, citing her FMLA-protected tardiness and absences as reasons for her termination.

70. Defendants' decision to terminate Sampson was motivated by her exercise of FMLA rights.

71. By terminating Sampson for her use of FMLA leave, Defendants violated 29 U.S.C. § 2615(a)(2), which prohibits employers from retaliating against employees for exercising their rights under the FMLA.

72. As a direct and proximate result of Defendants' unlawful retaliation, Sampson has suffered economic damages, including lost wages and benefits.

73. As a result of Defendants' wrongful conduct, Sampson is entitled to recover her lost wages and benefits, liquidated damages, and reasonable attorney's fees and costs pursuant to 29 U.S.C. § 2617(a).

**COUNT II: FMLA INTERFERENCE.**
**(Asserted Against All Defendants).**

74. Sampson re-alleges and incorporates by reference the allegations set forth in paragraphs 1-66, above.

75. The FMLA prohibits employers from interfering with, restraining, or denying the exercise or attempted exercise of rights provided under the Act.

76. Sampson was entitled to take FMLA leave to address flare-ups caused by her disabilities.

77. Defendants interfered with Sampson's FMLA rights by disciplining her for absences and tardiness that were explicitly covered under her approved intermittent FMLA leave.

78. Alternatively, to the extent Sampson had not renewed her FMLA leave, Defendants failed to notify her of her potential eligibility for FMLA leave after being put on notice that her absences and tardiness were potentially FMLA-qualifying.

79. Defendants' failure to notify Sampson of her potential FMLA eligibility violated 29 CFR § 825.300(b).

80. Defendants failure to provide FMLA notice prejudiced Sampson because it deprived her of the opportunity to designate her absences and tardiness as FMLA leave.

81. Defendants interfered with Sampson's FMLA rights by terminating her employment based on absences and tardiness that were protected under the FMLA or would have been designated as FMLA-protected had UH complied with its notice obligations.

82. By interfering with Sampson's rights under the FMLA, Defendants violated 29 U.S.C. § 2615(a)(1).

83. As a direct and proximate result of Defendants unlawful interference with Sampson FMLA rights, Sampson has suffered economic damages, including lost wages and benefits.

84. Sampson is entitled to recover her lost wages and benefits, liquidated damages, and reasonable attorney's fees and costs pursuant to 29 U.S.C. § 2617(a).

### COUNT III: WRONGFUL TERMINATION BASED ON DISABILITY DISCRIMINATION IN VIOLATION OF OHIO R.C. § 4112.02(A). (Asserted Against UH Only).

85. Sampson re-alleges and incorporates by reference the allegations set forth in paragraphs 1-77, above.

86. Sampson restates each and every prior paragraph of this Complaint as if fully rewritten herein.

87. Sampson is a qualified individual with disabilities, as defined by Ohio Revised Code § 4112.01(A)(13).

88. Sampson's PTSD, anxiety, and severe depression constitute disabilities under Ohio law because they are mental impairments that substantially limit one or more major life activities, including her ability to concentrate, regulate emotions, perform tasks under stress, and maintain focus during flare-ups.

89. At all times relevant, Sampson was able to perform the essential functions of her job with or without reasonable accommodations.

90. UH was aware of Sampson's disabilities and her need for reasonable accommodations, such as flexibility around her work hours as needed to address flare ups caused by her disabilities.

91. UH disciplined Sampson for conduct directly related to her disabilities, including tardiness and absences caused by disability-related flare-ups.

92. UH terminated Sampson on or about May 31, 2024, citing her disability-related absences and tardiness as reasons for her dismissal.

93. UH treated Sampson less favorably than similarly situated employees without disabilities, including employees who engaged in similar or worse attendance-related conduct.

94. As a result of UH's discrimination against Sampson in violation of O.R.C. § 4112.02, Sampson has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Sampson to injunctive, equitable, and compensatory monetary relief

95. As a result of UH's discrimination against Sampson in violation of O.R.C. § 4112.02, Sampson has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

96. In its discriminatory actions as alleged above, Mercy has acted with malice or reckless indifference to the rights of Sampson, thereby entitling Sampson to an award of punitive damages.

97. To remedy the violations of the rights of Sampson secured by O.R.C. § 4112.02, Sampson requests that the Court award her the relief prayed for below.

**COUNT IV: UNLAWFUL AIDING, ABETTING, COMPELLING, AND COERCING OF DISCRIMINATION IN VIOLATION OF O.R.C. § 4112.02(J)**
**(Asserted Against Walish and Schade Only).**

98. Sampson re-alleges and incorporates by reference the allegations set forth in paragraphs 1-97, above.

11

99. Pursuant to R.C. § 4112.02(J), it is unlawful "[f]or **any person** to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice..."

100. Courts have consistently held that individual liability is proper under § 4112.02(J) when a person actively participates in or facilitates discriminatory conduct. See *Argyriou v. David A. Flynn, Inc.*, 2021-Ohio-3524, ¶ 74; *Siwik v. Cleveland Clinic Found.*, 2020-Ohio-519, ¶ 73; *Anderson v. Bright Horizons Children's Centers, LLC*, 2022-Ohio-1031, ¶ 75; *Martcheva v. Dayton Board of Education*, 2020-Ohio-235, ¶ 69; *Gibbs v. Meridian Roofing Corp.*, 2020-Ohio-241, ¶ 65; *Bostick v. Salvation Army*, 2023-Ohio-933, ¶ 73; *Spahija v. Rae-Ann Holdings, Inc.*, 2019-Ohio-2222, ¶ 68; *Oster v. Huntington Bancshares Inc.*, 2018-Ohio-4011, ¶ 66; and *Freshley v. Huntington National Bank*, 2017-Ohio-8409, ¶ 63.

101. Walish and Schade aided, abetted, incited, coerced, and/or compelled UH's discriminatory termination of Sampson.

102. Walish and Schade violated R.C. § 4112.02(J) by aiding, abetting, and inciting discrimination.

103. As a result of Walish and Schade's discrimination against Sampson in violation of Ohio R.C. § 4112.02(A), Sampson has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Sampson to injunctive, equitable, and compensatory monetary relief.

104. As a result of Walish and Schade aiding, abetting, inciting, compelling, or coercing discrimination against Sampson in violation of Ohio R.C. § 4112.02(A), Sampson has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

105. In their actions as alleged above, Walish and Schade l acted with malice or reckless indifference to the rights of Sampson, thereby entitling Sampson to an award of punitive damages.

106. To remedy the violations of the rights of Sampson as secured by Ohio R.C. § 4112.02 et seq, Sampson requests that the Court award her the relief prayed for below.

## **PRAYER FOR RELIEF.**

WHEREFORE, Plaintiff Miranda Sampson requests judgment in her favor against Defendants, containing the following relief:

(a) An order directing UH to place Sampson in the position she would have occupied but for Defendants' unlawful treatment of her, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and other unlawful conduct are eliminated and do not continue to affect Sampson;

(b) An award against all Defendants of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Sampson for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment,

(c) On Counts I and II only, an award of liquidated damages;

(d) On Counts III and IV only, an award against UH of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Sampson for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

(e) On Counts III and IV only, an award of punitive damages;

(f) An award of costs that Sampson has incurred in bringing this action, as well as Sampson's reasonable attorneys' fees to the fullest extent permitted by law; and

(g) Awarding such other and further relief that this Court deems necessary and proper.

Respectfully submitted,

*/s/ Chris P. Wido*
Chris P. Wido (0090441)
SPITZ, THE EMPLOYEE'S LAW FIRM
3 Summit Park Drive, Suite 200
Independence, Ohio, 44131
Phone: (216) 364-1330
Fax:    (216) 291-5744
Email: chris.wido@spitzlawfirm.com

*Attorney for Plaintiff Miranda Sampson*

# JURY DEMAND

Plaintiffs Miranda Sampson demands a trial by jury by the maximum number of jurors permitted.

*/s/ Chris P. Wido*
Chris P. Wido (0090441)
SPITZ, THE EMPLOYEE'S LAW FIRM